IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **KATHERINE SWILLEY**<br>**Plaintiff,**<br><br>v.<br><br>**CITY OF HOUSTON, TEXAS,**<br>**CHIEF OF POLICE, J. NOE DIAZ,**<br>in his official capacity,<br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO.:**<br>4:25-cv-04125 |

## ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE COURT:**

**COMES NOW** Plaintiff **KATHERINE SWILLEY** by and through undersigned Counsel, and files this Complaint for violations of her Constitutional and Civil Rights under 42 U.S.C. §§ 1983, 1981, and Title VII (42 U.S.C. § 2000e), and would respectfully show the Court the following:

### I.  INTRODUCTION

1. This case arises from the Houston Police Department's unlawful use of fabricated disciplinary records, coerced "Last Chance" Compromise Waiver Agreement(s), and retaliatory termination to silence and punish a female officer who exercised her rights under Title VII of the Civil Rights Act of 1964 and the United States Constitution.

2. Plaintiff Katherine "Kathy" Swilley served the Houston Police Department ("HPD")

with distinction for more than twenty-two (22) years. In 2007, after filing a gender discrimination complaint with the EEOC, Plaintiff was pressured to sign a "Last Chance" Compromise Waiver Agreement(s) requiring her to immediately waive her right to pursue her complaint or any future EEOC claims. When Plaintiff refused, she was terminated under a sham process, branded with a dishonorable discharge for "untruthfulness," and barred from her profession.

3. HPD's actions deprived Plaintiff of her property and liberty interests without due process, retaliated against her for protected activity, discriminated against her on the basis of sex, stigmatized her with a fabricated dishonorable discharge, and committed fraud on the court to block her from vindicating her rights.

4. Plaintiff seeks declaratory and injunctive relief, reinstatement, correction of her records, back pay, compensatory damages, punitive damages, and all other relief available under law.

## II.  JURISDICTION AND VENUE

5. This action arises under the United States Constitution, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981 as enforced through 42 U.S.C. § 1983.

6. Section 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens. Because Defendant City of Houston is a municipal entity, Plaintiff's § 1981 claims are properly enforced via § 1983.

7. This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

8. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because the events giving rise to this Complaint occurred in Houston, Harris County, Texas, and Defendants are located in this District.

## III.  PARTIES

9. Plaintiff **Katherine A. Swilley** is a resident of Harris County, Texas, and a former police officer with the Houston Police Department.

10. Defendant **City of Houston**, Texas, is a municipal corporation organized under Texas law and may be served through its Mayor or City Attorney.

11. The Houston Police Department ("HPD") is not a separate jural entity but operates as a division of the City of Houston. The unlawful actions at issue in this Complaint were carried out by HPD officials, employees, and policymakers, and are attributable to the City of Houston under Monell.

12. Defendant **Chief J. Noe Diaz** is the current Chief of Police of the Houston Police Department and is sued in his official capacity for declaratory and injunctive relief.

## IV.  FACTUAL ALLEGATIONS

13. Plaintiff Katherine A. Swilley served HPD for over twenty-two (22) years until her wrongful termination in 2008.

14. In April 2007, Reverend William Lawson, a respected Houston community leader, met with then HPD Chief Harold Hurtt regarding Plaintiff. Chief Hurtt stated he had

not terminated Plaintiff and was told she had "walked off the job." On September 4, 2007, HPD's Administrative Disciplinary Committee issued a directive reading: "*Keep the Chief out of this*," confirming that Chief Hurtt was intentionally excluded from Plaintiff's disciplinary process.

15. On September 17, 2007, HPD convened a Loudermill hearing under IAD Case No. 29409-2007, addressing an allegation of untruthfulness. Internal Affairs had already determined on August 20, 2007, that the allegation was "*Not Sustained*."

16. Despite that finding, HPD officials coerced Plaintiff into signing a so-called "*Last Chance Compromise Waiver Agreement*". This agreement required Plaintiff to immediately waive any and all pending or future claims with the EEOC in order to save her job.

17. Plaintiff was strong-armed under duress and economic pressure, after union attorneys and representatives warned that she would otherwise be fired. The waiver stripped Plaintiff of rights guaranteed under Title VII, the Texas Commission on Human Rights Act, 42 U.S.C. §§ 1981 and 1983, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, and the First and Fourteenth Amendments to the United States Constitution, along with analogous state whistleblower protections.

18. On October 19, 2007, Plaintiff's new non-union attorney wrote to the City of Houston Human Resources Director, advising that the waiver was illegally obtained, null and void, and of no force or effect. The letter expressly stated Plaintiff would not drop her EEOC complaint and feared retaliation.

19. Plaintiff's fears were realized. During her May 20, 2008 Administrative Hearing, an IAD Sergeant testified under oath: "*Officer Swilley would not have been terminated if not for the October 19, 2007 letter.*"

20. HPD's own Post-Hearing Brief confirmed the Department disciplined Plaintiff because she refused to dismiss her EEOC complaint. Plaintiff's termination letter explicitly cited her alleged "*refusal to abide by the terms of the contract*" and her *refusal to drop her EEOC complaint as misconduct*.

21. This practice of coercive *Last Chance Waiver Agreements* was not unique to Plaintiff. In 2003, Sergeant Michael Cox likewise refused to sign an HPD "*Last Chance Waiver Agreement*" requiring him to relinquish statutory and constitutional rights. After Cox was terminated, the City settled his retaliation claim in 2008 for $155,000.00 USD, following his attorney's warning that such waivers violated constitutional protections. Despite warnings from Plaintiff's counsel and from Cox's counsel that HPD's waiver violated constitutional and civil rights, HPD nevertheless proceeded against both officers.

22. The City did not extend comparable relief to Plaintiff – a Black female. Instead, she has been continuously retaliated against, branded "dishonorable," and denied relief. The disparate treatment of Cox (male) and Plaintiff (female) underscores Plaintiff's gender-discrimination claims.

23. On March 12, 2008, HPD subjected Plaintiff to a sham Loudermill hearing. Rather than present evidence from IAD Case No. 30819-2007, officials recycled the closed

file from IAD No. 29409-2007. Plaintiff's union counsel, Robert Thomas and Aaron Suder, confirmed no records from IAD No. 30819-2007 were ever produced.

24. HPD fabricated a termination letter under IAD No. 30819-2007 and placed it in Plaintiff's personnel and IAD files. HPD then knowingly submitted to the Texas Commission on Law Enforcement ("TCOLE") an *unsigned* dishonorable F-5 Report – Separation of License, *falsely alleging* "untruthfulness," even though the charge had been classified as "*Not Sustained*".

25. On May 20, 2008, during administrative hearings, HPD officials including Sgt. Marsha Todd and Lt. James Siscoe admitted Plaintiff's termination letter was fabricated and the Loudermill proceeding was a sham. Despite these admissions, HPD continued to maintain the fabricated records in Plaintiff's files and transmitted them to TCOLE.

26. The official transcript also shows HPD attempted to present erroneous evidence and, when confronted, admitted that Plaintiff was terminated on a complaint that had already concluded in September 2007 under IAD 29409-2007 – not the complaint Plaintiff was officially on record as being terminated for in March 2008, under a different IAD issue No. 30819-2007.

27. On May 20, 2008, during administrative hearings, HPD officials Sgt. Marsha Todd and Lt. James Siscoe admitted they had failed to present the actual termination letter. When pressed about the absence of the underlying complaint on which Plaintiff was supposedly terminated, Sgt. Todd admitted that the department only had Plaintiff's prior disciplinary letter from IAD 29409-2007. When further questioned, Todd

conceded she did not have the complaint forming the basis for termination and dismissed the omission as irrelevant.

28. HPD officials openly testified that they did not even know who drafted the termination letter. HPD Deputy Director and General Counsel Craig Ferrell admitted under oath that he "*wasn't sure who wrote it*".

29. Plaintiff's union attorneys confirmed in letters that no documents regarding IAD 30819-2007 were ever provided, and only the closed 164-page IAD 29409-2007 file was presented at the September 2007 Loudermill hearing.

30. HPD further attempted to mislead the tribunal by submitting a fabricated Respondent's Exhibit List dated May 20, 2008, during administrative hearings, to the independent arbitrator, containing false entries.

31. HPD then carried this fraud into court. To secure dismissal of Plaintiff's prior civil case, HPD presented erroneous evidence, including a fabricated certification of then-Chief Harold Hurtt, swearing to records known to be false, in order to obtain a fraudulent summary judgment.

32. These acts constitute *fraud on the* court. HPD's use of fabricated evidence and sham certifications not only deprived Plaintiff of her job and career, but also corrupted the integrity of the judicial process.

33. Reverend William Lawson later provided a sworn declaration that Chief Hurtt himself told him he had not terminated Plaintiff, believed she had "walked off the job," and had been misled. Reverend Lawson's declaration corroborates that HPD fabricated Plaintiff's termination outside the Chief's authority.

34. Reverend Lawson's declaration further confirmed that Hurtt's administrative sergeant, Sgt. Carter, told him Plaintiff had not been terminated, reinforcing that the termination letter was fabricated.

35. By HPD's own admissions, Plaintiff's "termination" was nothing more than a sham, with her indefinite suspension still pending. Texas law (Goode v. Firefighters & Police Officers' Civil Serv. Comm'n, 976 S.W.2d 822 (Tex. App. Houston [1st Dist.] 1988, pet. denied)) makes clear that an indefinite suspension is not a termination unless formally converted to "permanent dismissal" by a hearing examiner or the Commission. No such order exists.

36. Plaintiff has therefore remained in indefinite suspension status, never properly terminated, while HPD maintained fabricated records branding her as "dishonorable" and "untruthful."

37. The combination of a fabricated termination letter, sham Loudermill hearing, false and invalid unsigned F-5 dishonorable discharge, fraudulent submissions to courts and TCOLE, and refusal to correct records under Texas Occupations Code §§ 1701.451–.452 has permanently barred Plaintiff from law enforcement employment and destroyed her professional reputation.

## V. CAUSES OF ACTION

### A. DEPRIVATION OF PROPERTY AND LIBERTY INTERESTS WITHOUT DUE PROCESS — (42 U.S.C. § 1983 – Fourteenth Amendment)

Plaintiff incorporates all preceding paragraphs.

38. Plaintiff had a constitutionally protected property interest in her continued employment as a Senior Police Officer with HPD, along with associated benefits and DROP retirement eligibility. Plaintiff also had a liberty interest in her professional reputation, her good name, and her ability to pursue future employment in law enforcement.

39. Defendants deprived Plaintiff of these interests through a sham disciplinary process deliberately structured to avoid due process. On September 17, 2007, HPD held a Loudermill hearing on IAD 29409-2007, even though the charge of "untruthfulness" had already been classified as *"Not Sustained"*.

40. When Plaintiff refused to abandon her EEOC complaint, HPD escalated to a March 12, 2008, Loudermill that was nothing more than a *charade.* Officials recycled the closed IAD 29409-2007 file instead of producing records for IAD 30819-2007, the case supposedly supporting termination.

41. Plaintiff's union counsel, Robert Thomas and Aaron Suder, confirmed that no documents tied to IAD 30819-2007 were produced. HPD's Deputy Director Craig Ferrell even admitted under oath he did not know who drafted the termination letter.

42. HPD fabricated a termination letter under IAD 30819-2007, placed it in Plaintiff's file, and transmitted it to TCOLE along with an *unsigned*, dishonorable F-5 report. Under Texas law, *unsigned F-5s are null and void*, yet HPD used this document to falsely brand Plaintiff "*dishonorable*" and "*untruthful*".

43. On May 20, 2008, HPD officials Sgt. Marsha Todd and Lt. James Siscoe admitted under oath that Plaintiff's termination letter was fabricated and the March 2008

Loudermill was a sham. Despite this, HPD continued to maintain the fabricated record and submit it to TCOLE.

44. Reverend Lawson provided a sworn declaration confirming that Chief Hurtt himself said he had not terminated Plaintiff and had been excluded from the process by the directive: *"Keep the Chief out of this."*

45. By law, Plaintiff's suspension has never been converted to a final dismissal. Her status remains *indefinite suspension still pending*, yet Defendants fabricated her termination and branded her with a dishonorable discharge.

46. These facts, taken together, deprived Plaintiff of her property interest in employment and her liberty interest in reputation without due process of law, in violation of the Fourteenth Amendment.

### B. RETALIATION FOR PROTECTED ACTIVITY — (Title VII, 42 U.S.C. § 2000e-3(a))

Plaintiff incorporates all preceding paragraphs.

47. Plaintiff engaged in protected activity by filing a gender discrimination charge with the EEOC in 2007.

48. HPD retaliated by coercing Plaintiff into signing a *"Last Chance Compromise Waiver Agreement"* – based on a bogus untruthfulness charge – and requiring her to permanently abandon her EEOC rights. This agreement was unlawful under Title VII, EEOC Enforcement Guidance, and Texas Local Government Code § 143.209.

49. On October 19, 2007, Plaintiff's non-union attorney declared the waiver null and void in a letter to HR, confirming she would not dismiss her EEOC complaint.

50. Retaliation immediately followed. At the May 20, 2008 hearing, an IAD Sergeant testified: *"Officer Swilley would not have been terminated if not for the October 19, 2007 letter."*

51. HPD's own Post-Hearing Brief and Plaintiff's termination letter expressly cited her refusal to dismiss her EEOC complaint as grounds for termination.

52. The retaliation did not end in 2008. HPD knowingly transmitted a false, invalid, unsigned dishonorable F-5 to TCOLE, tied directly to Plaintiff's refusal to abandon her EEOC rights. That F-5 is republished with every background check, blocking Plaintiff's employment opportunities in 2015, 2018, 2021, 2023, 2025 and future opportunities that may be sought with law enforcement agencies.

53. In 2021, the Fort Bend County Sheriff's Office explicitly rejected Plaintiff's application because of the dishonorable F-5, which contained the *"untruthfulness"* charge.

54. In 2023, amendments to Texas Occupations Code §§ 1701.451–.4522 required all hiring law-enforcement agencies to obtain and review an applicant's personnel and TCOLE records. This statutory mandate ensures that Plaintiff's fabricated and retaliatory F-5 is automatically republished in every hiring process, permanently barring her from future law-enforcement employment.

55. The limitations period is tolled under *fraudulent concealment*. HPD concealed the retaliatory basis by fabricating a termination letter, staging sham Loudermills, and submitting a fraudulent certification of Chief Hurtt in court. Plaintiff could not

reasonably have discovered the scheme until admissions in 2008 and statutory reforms in 2022–2023 confirmed the illegality.

56. Male comparator Sergeant Michael Cox faced the same waiver scheme. He refused, was terminated, and the City settled with him for $155,000. Plaintiff, a woman, was retaliated against continuously, branded dishonorable, and denied relief.

57. HPD's ongoing refusal to correct Plaintiff's F-5, and the continuous republication of the retaliatory discharge, make this claim timely and actionable.

58. Defendants' retaliation for Plaintiff's EEOC activity is ongoing, deliberate, and unlawful under Title VII.

### C. STIGMA-PLUS LIBERTY INTEREST VIOLATION — (42 U.S.C. § 1983 – Fourteenth Amendment)

Plaintiff incorporates all preceding paragraphs.

59. Defendants fabricated a termination letter under IAD 30819-2007, created an invalid dishonorable F-5, and branded Plaintiff "*untruthful*," a devastating stigma in law enforcement.

60. The stigma was **published and republished** through HPD's personnel system, the TCOLE records/database, and public testimony before City Council in 2019 and 2023.

61. Each republication is a new constitutional injury. Plaintiff was denied employment in 2015, 2018, 2021, 2023, and 2025 because of the dishonorable F-5.

62. In 2023, Texas law changes mandated review of personnel and TCOLE records, ensuring perpetual republication of the retaliatory dishonorable discharge.

63. The stigma is inseparable from the deprivation of Plaintiff's liberty interest in her chosen profession. The ongoing dissemination constitutes a ***continuing violation*** of her rights.

64. Defendants' actions deprived Plaintiff of her liberty interest in reputation and employability, actionable under § 1983.

### D.  *MUNICIPAL LIABILITY (MONELL CLAIM)* — (42 U.S.C. § 1983)

Plaintiff incorporates all preceding paragraphs.

65. These constitutional violations were not aberrations but flowed directly from HPD's official *policies, practices, and customs*.

66. HPD maintained a policy of coercing officers into Last Chance Compromise Waiver Agreements, requiring abandonment of EEOC rights, retaliating against those who refused.

67. HPD has had a custom of conducting sham Loudermill hearings in which no evidence from the actual pending IAD cases was introduced. Instead, HPD relied on recycled files from prior investigations – often based on unsubstantiated insubordination allegations, bogus untruthfulness charges, or baseless criminal investigations – to preordain termination.

68. HPD fabricated records, including Plaintiff's termination letter, a fraudulent Respondent's Exhibit List, and a false certification from Chief Hurtt, and used them to mislead arbitrators and courts.

69. From 2015 through 2025, HPD repeatedly refused to correct Plaintiff's known-false records, *demonstrating a continuum of deliberate indifference and ratification of unconstitutional practices*.

70. *Admissions* by Sgt. Todd, Lt. Siscoe, and Deputy Director Ferrell confirm HPD leadership knew of the sham process yet ratified its outcome.

71. These customs and practices were the moving force behind the deprivation of Plaintiff's rights and continue to inflict ongoing harm.

### E. *GENDER DISCRIMINATION (DISPARATE TREATMENT)* — *(Title VII, 42 U.S.C. § 2000e-2(a))*

Plaintiff incorporates all preceding paragraphs.

72. Plaintiff, a female officer, was targeted for termination and dishonorably discharged after refusing to dismiss her EEOC complaint.

73. Male comparator Sergeant Michael Cox faced the same waiver scheme, refused, and was terminated, but the City settled his claim for $155,000.00 USD.

74. Plaintiff was denied any comparable relief. Instead, HPD fabricated her termination, submitted an unsigned dishonorable F-5 to TCOLE, and left her permanently branded and unemployable.

75. This disparate treatment persists today. Plaintiff remains denied employment because of the dishonorable F-5, while her male comparator was compensated and shielded from ongoing harm.

76. Plaintiff's gender was a motivating factor in the disparate treatment. Defendants' actions constitute unlawful sex discrimination under Title VII.

### F. FRAUD ON THE COURT / ABUSE OF PROCESS — (42 U.S.C. § 1983 and Inherent Authority)

Plaintiff incorporates all preceding paragraphs.

77. HPD fabricated Plaintiff's termination letter, staged sham hearings, and transmitted an unsigned dishonorable F-5 to TCOLE.

78. HPD then presented fabricated records and a fraudulent certification of Chief Hurtt in Plaintiff's prior litigation, securing dismissal by summary judgment.

79. These actions constitute *fraud on the court* – the most severe abuse of the judicial system – corrupting the integrity of proceedings and depriving Plaintiff of her constitutional right of access to the courts.

80. Fraud on the court is ongoing, as the City continues to rely on fabricated records in refusing to correct Plaintiff's files and in defending against her claims.

81. Defendants' fraud on the court and abuse of process are independently sanctionable under this Court's inherent authority and actionable under § 1983.

### G. VIOLATION OF 42 U.S.C. § 1981 (RACE DISCRIMINATION AND/OR RETALIATION) — ENFORCED VIA 42 U.S.C. § 1983
*(Pled in the alternative and without waiver of Title VII/§ 1983 claims)*

Plaintiff incorporates all preceding paragraphs.

82. Section 1981 guarantees to all persons the same right to make and enforce contracts as is enjoyed by white citizens, free from race discrimination and retaliation for opposing race discrimination. Against municipal actors, § 1981 is enforced through § 1983, and liability attaches where the violation was caused by a policy, practice, or custom of the municipality.

83. In the alternative, to the extent the evidence establishes that Defendants acted with race-based animus and/or retaliated against Plaintiff for opposing or refusing to participate in race discrimination, Defendants interfered with and impaired Plaintiff's rights to make and enforce employment contracts in law enforcement in violation of § 1981 (as enforced via § 1983).

84. Defendants, acting under color of law, ***fabricated disciplinary records***, staged ***sham Loudermill proceedings***, and transmitted an ***invalid dishonorable F-5*** branding Plaintiff "untruthful," then ***published and republished*** those records through HPD and TCOLE to prospective employers. Defendants did so ***with discriminatory/retaliatory purpose*** and in ***reckless disregard*** of Plaintiff's § 1981 rights.

85. Each time a law-enforcement agency reviewed Plaintiff's TCOLE/HPD file and declined to hire her, Defendants ***interfered with a specific prospective employment contract*** (including but not limited to *2015, 2018, 2021, 2023, and 2025* denials; expressly including Fort Bend County Sheriff's Office in 2021). Those post-2019 refusals constitute independent, timely § 1981 injuries.

86. The City's policies, customs, and practices, including (a) coercive "Last Chance Compromise Waiver Agreements"; (b) fabrication of termination letters and exhibit lists; (c) fraudulent certifications submitted to tribunals; (d) maintenance and republication of false records to TCOLE; and (e) refusal to correct known-false records from 2015 through 2025 were and are the moving force behind the § 1981 violations.

87. Defendants' *ongoing republication* and *refusals to correct* in 2023–2025 ensure continuing interference with Plaintiff's right to enter employment contracts, rendering this claim timely and independently actionable.

88. As a direct and proximate result, Plaintiff suffered lost employment opportunities, back pay and front pay, loss of benefits, reputational harm, emotional distress, and other damages.

89. Pursuant to § 1983, Plaintiff seeks judgment against the City of Houston and Chief J. Noe Diaz in his official capacity for violating § 1981, including: declaratory relief; injunctive relief (record correction, F-5 correction to Honorable, reinstatement or front pay); compensatory damages; punitive damages where permitted; attorneys' fees and costs under 42 U.S.C. § 1988; and pre- and post-judgment interest.

### H. VIOLATION OF EQUAL PROTECTION (SEX DISCRIMINATION) — (42 U.S.C. § 1983 – Fourteenth Amendment)

Plaintiff incorporates all preceding paragraphs.

90. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from treating similarly situated individuals differently on the basis of sex.

91. Plaintiff, a female Senior Police Officer, was subjected to discriminatory treatment when she was forced to sign an unlawful "Last Chance Compromise Waiver Agreement," terminated after refusing to dismiss her EEOC complaint, branded with a fabricated dishonorable F-5 discharge, and permanently barred from law-enforcement employment.

92. Male comparator Sergeant Michael Cox faced the same waiver scheme in 2003,

refused to relinquish his statutory and constitutional rights, and was terminated. Yet the City of Houston quickly settled with Cox in 2008 for $155,000.00 USD, effectively vindicating him and sparing him any permanent stigmatization.

93. Plaintiff, by contrast, was left permanently branded as "dishonorable" and "untruthful," denied reinstatement or settlement, and continues to suffer republication of the fabricated F-5 through TCOLE in every hiring process from 2015 through 2025.

94. The disparate treatment between Plaintiff (female) and Cox (male) was intentional, motivated by sex discrimination, and constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment.

95. Defendant City of Houston is liable under Monell because the discriminatory treatment arose from HPD's policies, customs, and practices, including the use of unlawful waiver agreements and fabricated disciplinary records, which the City ratified and continues to enforce.

96. As a direct and proximate result of Defendants' Equal Protection violations, Plaintiff suffered loss of employment, loss of retirement benefits, lost back pay and front pay, reputational harm, and emotional distress.

97. Plaintiff seeks declaratory and injunctive relief, reinstatement or front pay, correction of her records, compensatory damages, punitive damages where permitted, attorneys' fees under 42 U.S.C. § 1988, and all other relief to which she is entitled.

## VI. DAMAGES AND PRAYER FOR RELIEF

98. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has

suffered:

- Loss of her position and salary as a Senior Police Officer with HPD;
- Lost back pay, front pay, and lost raises/promotions;
- Loss of retirement and DROP benefits;
- Interference with her right to make and enforce employment contracts in law enforcement;
- Loss of professional opportunities due to the false dishonorable F-5 and mandatory republication under Texas Occupations Code §§ 1701.451–.4522;
- Severe emotional distress, mental anguish, and reputational harm;
- Continuing stigma and denial of employment; and
- Out-of-pocket litigation and administrative expenses.

99. Defendants' conduct was intentional, malicious, and carried out with reckless disregard for Plaintiff's federally protected rights under Title VII, § 1981, and the First and Fourteenth Amendments (Due Process and Equal Protection).

100. Plaintiff seeks the following relief against the City of Houston and Chief J. Noe Diaz in his official capacity:

   a. Declaratory judgment that Defendants violated Plaintiff's rights under Title VII, 42 U.S.C. § 1981, and the United States Constitution (Due Process and Equal Protection);

   b. Injunctive relief ordering Defendants to:
   - Remove the fabricated termination letter from Plaintiff's personnel files;
   - Correct Plaintiff's TCOLE F-5 record to reflect an *Honorable Discharge*;
   - Issue Plaintiff an HPD Retirement Identification Card;

   c. An award of back pay, front pay, lost benefits, retirement losses, and compensatory damages for economic loss, reputational harm, and emotional distress;

d. Exemplary and punitive damages to the fullest extent permitted by law under § 1981 and § 1983**;**

e. Attorneys' fees and costs under 42 U.S.C. § 1988 and Title VII

f. Pre- and post-judgment interest; and

g. All other relief to which Plaintiff may be entitled, whether at law or equity.

## VII. <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all claims and issues so triable as a matter of right.

08/31/2025

Respectfully Submitted,
*/s/Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No. 0403083
Admitted: **U.S. District Court, Southern District of Texas**
SDTX Bar No. 3746531
info@vincentlawpllc.com
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas 77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas 77094
Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PLAINTIFF**