United States District Court
Southern District of Texas

**ENTERED**
July 17, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KATHERINE A. SWILLEY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-4125 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This lawsuit is the latest brought by Katherine Swilley disputing her 2008 termination from her job with the Houston Police Department. In 2012, the Fifth Circuit issued an opinion affirming the grant of summary judgment to the City and a prior police chief and dismissing Swilley's lawsuit arising out of the same job termination. Undeterred, over a decade later, Swilley brings this new lawsuit against the City and the current Houston Police Chief, Joe Diaz, alleging "post-judgment" conduct as the basis for again challenging her 2008 termination. The City and Chief Diaz have moved to dismiss under both Rule 12(b)(1) and Rule 12(b)(6). (Docket Entry Nos. 12, 13). Swilley has moved to strike the City and Chief Diaz's answer to the amended complaint. (Docket Entry No. 21).

Swilley is not entitled to the redo she seeks. Based on the pleadings, the motion, the record, and the applicable law, the court grants the Rule 12(b)(6) motion to dismiss, denies the Rule 12(b)(1) motion, and denies as moot Swilley's motion to strike. This dismissal is with prejudice. The reasons for this ruling are set out below.

## I.    Background

Swilley is a former police officer with the Houston Police Department ("HPD"). She worked at HPD for over 22 years, until she was terminated in 2008.  (Docket Entry No. 11 ¶ 14). This is her second lawsuit related to that job termination.  In the first lawsuit, Judge Hittner granted summary judgment to the City of Houston and a prior police chief and dismissed Swilley's claims under 42 U.S.C. § 1983 for violations of her First and Fourteenth Amendment rights, for violations of Title VII of the Civil Rights Act of 1964, and for violations of § 1985.  *Swilley v. City of Houston*, Civ. Action No. H-09-2995, 2011 WL 13185743 (S.D. Tex. Apr. 11, 2011).  The Fifth Circuit affirmed Judge Hittner's summary judgment ruling.  *Swilley v. City of Houston*, 457 F. App'x 400 (5th Cir. 2012) (per curiam).

Because much of the Rule 12(b)(6) motion to dismiss turns on the preclusive effect of Swilley's earlier lawsuit, the court repeats the Fifth Circuit's factual summary here.[1]  Swilley had founded Texas Cops & Kids, Inc., a nonprofit crime prevention program for children.  *Id.* at 401. In 2006, Harold Hurtt, then the Houston Chief of Police, learned of the program and thought Swilley could implement a program similar to one that he had worked on when he was with the Phoenix, Arizona police department.  *Id.* at 401–02.  Swilley was assigned to the Public Affairs Department of HPD to work on the program.  *Id.* at 402.  Although Chief Hurtt believed that Texas Cops & Kids was an official HPD program, it was not, despite Swilley's efforts to publicize the program while wearing her official HPD uniform.  *Id.*

Swilley "repeatedly refused" to follow the chain of command in her new position with the Public Affairs Department.  *Id.*  Instead, she insisted that she worked directly for Chief Hurtt,

---

[1] A court may take judicial notice of prior court proceedings in deciding a motion to dismiss.  *See Rodriguez v. JPMorgan Chase Bank, N.A.*, Civ. Action No. SA-16-CV-410-XR, 2016 WL 4507388, at *2 (W.D. Tex. Aug. 26, 2016).

which was false. *Id.* In March 2007, once Chief Hurtt realized that Texas Cops & Kids was not an official HPD program and that Swilley was not following the chain of command, he asked Swilley's supervisors to meet with her to "better understand" her involvement with the Texas Cops & Kids program. *Id.* Swilley did not cooperate and instead "bec[a]me argumentative and defiant, questioned her supervisors' motives, and indicated she would continue to violate [HPD] policy." *Id.* Swilley's supervising lieutenant filed a complaint of insubordination with HPD's Internal Affairs Department. *Id.* The Internal Affairs Department also conducted an investigation into possible criminal violations involving grant money intended for the Kids at Hope program. *Id.* Around this time, Swilley complained to Chief Hurtt of acts of discrimination against her. In June 2007, she filed a complaint for gender discrimination and retaliation with the Equal Opportunity Employment Commission ("EEOC"). *Id.*

At the conclusion of the Internal Affairs Department investigation in September 2007, HPD conducted a *Loudermill* hearing.[2] *Id.* Chief Hurtt presented Swilley with charges of untruthfulness, insubordination, and violations of an HPD policy on outside employment. *Id.* Swilley had counsel at this hearing. *Id.* After the hearing, Swilley signed a waiver relinquishing the claims in her EEOC complaint. *Id.* In the waiver, she accepted a 15-day suspension, which she agreed not to appeal. *Id.* In exchange, HPD dismissed the misconduct charge that could have resulted in her termination. *Id.* Despite signing the waiver, one month later, Swilley, again represented by counsel, sent Chief Hurtt another letter, asserting that her discrimination and retaliation claims had not been investigated and complaining that she had signed the waiver under duress. *Id.* Swilley asserted that she no longer intended to abide by the commitments she had made in signing the waiver. *Id.*

---

[2] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

The Internal Affairs Department then conducted a second investigation into Swilley's discrimination and retaliation claims. *Id.* The Internal Affairs Department was unable to corroborate her claims. Instead, it issued a 74-page report detailing additional policy violations by Swilley and recommending that she be terminated from HPD. *Id.*

In March 2008, HPD conducted a second *Loudermill* hearing. *Id.* Swilley was again represented by counsel. *Id.* After the hearing, Swilley's employment with HPD was terminated. *Id.* at 403. She appealed her termination to an independent hearing examiner, as permitted under Texas law. *Id.* On appeal, Swilley, again represented by counsel, received a "full hearing," with numerous witnesses and exhibits. *Id.* At the hearing, Swilley "admitted that she had been untruthful about a variety of her statements in the 2007 and 2008 investigations." *Id.* The examiner affirmed Swilley's termination. *Id.*

Swilley then sued in federal court, asserting claims of gender discrimination, retaliation, constitutional violations, and a conspiracy by HPD.[3] *Id.* In April 2011, Judge Hittner granted summary judgment to the City and to the acting chief, who had been substituted in for Chief Hurtt. *Id.* Swilley appealed. *Id.* The Fifth Circuit robustly and clearly affirmed the summary judgment ruling. The Fifth Circuit found that Swilley was not qualified for her position because she was "affirmatively unwilling to comply with the basic organizational mandate for the position," making her discrimination claim "without merit." *Id.* The Circuit found that the retaliation claim was properly dismissed because Swilley failed to prove that the City's "stated reason for her termination"—her untruthfulness—was not true; instead, Swilley admitted at her post-termination appeal hearing that she had been untruthful in the 2007 and 2008 investigations. *Id.* at 404. Third,

---

[3] Five different lawyers represented Swilley at various points in the district court proceedings, and her appeal was pro se (where she fared no better). *Swilley*, 457 F. App'x at 401, 403.

the Circuit held that Swilley failed to offer proof of any of the elements of the § 1983, Title VII, and First Amendment retaliation claims, noting that Swilley's due process claim failed because she was provided two pre-termination *Loudermill* hearings and a post-termination hearing, all with counsel representation.  *Id.*

On August 31, 2025, Swilley filed this lawsuit.  (Docket Entry No. 1).  She once again attempts to relitigate her 2008 job termination, which she claims was not a proper termination but rather an "indefinite suspension."  (*Id.* ¶ 6).  The "post-judgment conduct" that forms the basis of this new complaint largely hinges on Swilley's F-5 form.  An F-5 is a form report that law enforcement agencies are required to submit to the Texas Commission on Law Enforcement ("TCOLE") after a law enforcement officer "resigns, retires, is terminated, or separates from the agency."  TEX. OCC. CODE § 1701.451(a)(1) (2023).  Swilley alleges that her F-5 incorrectly states "untruthfulness" as the basis of her dismissal, is improperly unsigned, and that because 2023 Texas legislative reforms make pre-employment review of TCOLE and personnel records mandatory, her "false" discharge is republished with every application, creating a continuing violation.  (*Id.* ¶¶ 38, 39).  Swilley seeks declaratory and injunctive relief as well as damages.  (*Id.* at 25).

## II.     The Applicable Legal Standards for a Motion to Dismiss

### A.  The Rule 12(b)(1) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) calls into question the district court's subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (quoting reference omitted).  The party invoking the court's jurisdiction

carries the burden of demonstrating that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

### B.  The Rule 12(b)(6) Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the

6

parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## III.   Analysis

### A.  The Rule 12(b)(1) Motion to Dismiss

The City and Chief Diaz first move to dismiss the claims against them under Rule 12(b)(1) for lack of subject matter jurisdiction.  (Docket Entry No. 12).  They argue that a Texas statute requires Swilley to have challenged her F-5 administratively before filing suit, and that because she failed to exhaust her administrative remedies, the court lacks subject matter jurisdiction.

While it is true that when a Texas state statute "provides judicial review, ordinarily the trial court does not acquire jurisdiction until the party exhausts its administrative remedies," *Tex. Disposal Sys. Landfill, Inc. v. Travis Cnty. Appraisal Dist. ex rel. Crigler*, 694 S.W.3d 752, 757–58 (Tex. 2024), the City and Chief Diaz overlook the fact that Swilley brings only constitutional claims under § 1983.[4]  The Supreme Court has made clear that "the exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982); *see also Griggs v. Chickasaw County*, 930 F.3d 696, 703 (5th Cir. 2019); *Aplon v. City of Jasper*, No. 1:22-CV-18, 2022 WL

---

[4] Although Swilley's amended complaint also asserts Title VII violations, she clarifies in her response brief that she "alleges ongoing constitutional violations arising from the continued republication of false information, not Title VII retaliation." (Docket Entry No. 18 at 8).  Swilley also expressly disclaims any separate fraud claim. (*Id.*).  Based on her response brief, the court concludes that Swilley has abandoned any claims besides her constitutional claims under § 1983.

17815172, at *6 (E.D. Tex. Nov. 14, 2022); *Arredondo v. San Felipe Del Rio Consolidated Indep. Sch. Dist.*, No. DR-22-CV-0054-AM-JAC, 2024 WL 4004978, at *1 (W.D. Tex. June 20, 2024).

The court denies the motion to dismiss under Rule 12(b)(1). (Docket Entry No. 12).

### B.   The Rule 12(b)(6) Motion to Dismiss

#### 1.   The Claims Against Chief Diaz

The only defendants in this case are the City of Houston and Chief Diaz in his official capacity.  Swilley's response brief clarifies that she does not intend to assert any claims against Chief Diaz in his individual capacity.  (Docket Entry No. 18 at 19).  Because the claims against Chief Diaz are in his official capacity only, they are duplicative of the claims against the City of Houston.  *See Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009) ("[O]fficial capacity suits are really suits against the government entity.").  Swilley's claims against Chief Diaz are dismissed, with prejudice, as redundant.  *See Chavez v. Alvarado*, 550 F. Supp. 3d 439, 450 (S.D. Tex. 2021).

#### 2.   Preclusion

"Claim preclusion, or res judicata, bars the relitigation of claims that either have been litigated or should have been raised in an earlier suit."[5] *Jackson v. Fort Bend Cnty. Sheriff's Dep't*, 722 F. App'x 390, 390 (5th Cir. 2018) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).  It applies when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was

---

[5] Although res judicata is normally an affirmative defense, references to Swilley's prior case are included in her complaint, and so it is appropriate to dismiss on the grounds of preclusion. *See Nix v. Major League Baseball*, 62 F.4th 920, 928 n.6 (5th Cir. 2023); *see also Stevens v. St. Tammany Parish Gov't*, 17 F.4th 563, 571 (5th Cir. 2021).

8

involved in both actions." *Nix v. Major League Baseball*, 62 F.4th 920, 928 (5th Cir. 2023) (quoting *BVS Const., Inc. v. Prosperity Bank*, 18 F.4th 169, 173 (5th Cir. 2021)). Meanwhile, "[i]ssue preclusion, or collateral estoppel, bars the relitigation of facts or law between the same parties in a future lawsuit." *Jackson*, 722 F. App'x at 390. "Issue preclusion or collateral estoppel is appropriate if (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) no special circumstances exist that would render preclusion inappropriate or unfair." *Id.*

The court must dismiss this case on the grounds of preclusion. Although the City and Chief Diaz refer only to claim preclusion, (*see, e.g.*, Docket Entry No. 13 at 5), many of the arguments sound in issue preclusion. Swilley is plainly trying to relitigate issues of fact and law that were adjudicated at summary judgment in her first case and that were necessary to that decision. "Generally, disposition of a case on summary judgment grounds meets the 'actually litigated' requirement of the issue preclusion test." *In re Moye*, No. 08-37770, 2011 WL 4808124, at *8 (Bankr. S.D. Tex. Oct. 7, 2011). Among other things, the Fifth Circuit affirmed the grant of summary judgment to the City of Houston and the acting chief on Swilley's retaliation claims for her termination in the prior case because Swilley *admitted* that she had been untruthful, a stated ground for her termination. *Swilley*, 457 F. App'x at 404. The Fifth Circuit rejected Swilley's due process claim because she had received the process that she was due: two pre-termination *Loudermill* hearings and a post-termination hearing, all with counsel. *Id.*

To the extent that Swilley is trying to relitigate her 2008 discharge, "that ship has sailed," *Mosley v. Axiom Fin. Servs.*, No. A-11-CA-494-SS, 2011 WL 13324278, at *3 (W.D. Tex. Nov. 11, 2011), over a decade ago. Her assertion that the "continuing violation" doctrine allows her to relitigate her termination is unavailing. *See Ross v. Walker*, Civ. Action No. 3:25-CV-534-KHJ-

9

MTP, 2025 WL 2886452, at *3 (S.D Miss. Oct. 10, 2025) (noting that the continuing violation doctrine "allows a plaintiff to extend the statute of limitations period for an otherwise time-barred claim by showing that the violation manifested itself over time rather than in a series of discrete acts. . . . [it] cannot revive claims already litigated and dismissed"). Because Swilley is trying to "resurrect claim[s] and issues previously adjudicated in" her first suit, the court "is compelled to apply the preclusion doctrines," "preventing [Swilley] from re-litigating issues already decided." *Yates v. Spring Indep. Sch. Dist.*, Civ. Action No. 4:23-CV-03736, 2024 WL 2137652, at *2 (S.D. Tex. May 13, 2024).[6]

What remains after preclusion are Swilley's allegations that her F-5 is unsigned and that it is sent to law enforcement agencies every time she applies for a job. Neither states a constitutional violation. To the extent that Swilley's allegation is generally that her old reports do not comply with the new Texas laws, Swilley did not respond to the City and Chief Diaz's argument that "there is nothing in the 2023 amendments which required law enforcement agencies to revise old reports so they would align with any new statutory language." (Docket Entry No. 13 at 9 (citing *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 138–39 (Tex. 2010)). "[U]nder Texas law, an 'act will not be applied retrospectively unless it appears by fair implication from the language used that it was the intent of the Legislature to make it applicable to both past and future transactions.'" *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 359 (5th Cir. 2005) (quoting *Ex parte Abell*, 613 S.W.2d 255, 258 (Tex. 1981)); *see also Bank of Am., N.A. v. Stanley*, 728 F. Supp. 2d 883, 893 (S.D. Tex. 2010) ("Texas law presumes that laws do not apply retroactively.").

---

[6] Moreover, despite Swilley's assertion that she could not have challenged certain conduct in her prior suit, many of her claims are, in fact, based on actions either were, or should have been, raised in her prior suit. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 315 (5th Cir. 2004).

10

Finally, as the City and Chief Diaz also point out in their reply brief, Swilley does not address the issue of statutory immunity, which prevents a law enforcement agency or its head from being liable for civil damages for making a person's information available to a hiring law enforcement agency.  (Docket Entry No. 22 at 3 (citing TEX. OCC. CODE § 1701.456(b) (2008, 2023); § 1701.451 (2023)).   Swilley addresses only qualified immunity, which is irrelevant because she makes no claims against Diaz in his individual capacity.  (Docket Entry No. 18 at 19).

The court grants the Rule 12(b)(6) motion to dismiss and dismisses Swilley's claims, with prejudice, because amendment would be futile.

## IV.    Conclusion

The court denies the Rule 12(b)(1) motion to dismiss.  (Docket Entry No. 12).  The court grants the Rule 12(b)(6) motion to dismiss.  (Docket Entry No. 13).  The court denies the motion to strike as moot.  (Docket Entry No. 21).  This case is dismissed, with prejudice, because leave to amend would be futile.  The court will separately enter final judgment dismissing this case. The defendants may move under Rule 54(d) to recover their costs and attorney's fees incurred in defending against Swilley's claims asserted in this lawsuit.[7]

SIGNED on July 16, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge

---

[7] The defendants raised attorneys' fees in a counterclaim (Docket Entry No. 14), which Swilley never separately moved to dismiss.  The court will address any issues regarding fees and costs in a Rule 54(d) motion.  *See Harrison v. Concentra Health Servs., Inc.*, No. 3:99-CV-1975-H, 2000 WL 1923500, at *5 (N.D. Tex. Nov. 20, 2000); *Brown v. Praxair, Inc.*, Civ. Action No. 17-00384-BAJ-RLB, 2018 WL 4365526, at *3 (M.D. La. Sep. 13, 2018) ("The Court will reserve making a determination on attorney's fees until Defendants have filed a motion for attorney's fees in accordance with Rule 54(d)(2)[.]").